UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WESTCHESTER INDEPENDENT LIVING CENTER, INC., a nonprofit organization; KAYLE HILL, an individual; and MICHAEL HELLMANN, an individual; on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>-against-<br><br>STATE UNIVERSITY OF NEW YORK, PURCHASE COLLEGE; THOMAS J. SCHWARZ, in his official capacity as President of Purchase College; and H. CARL MCCALL, in his official capacity as Chairman of the State University of New York Board of Trustees,<br><br>             Defendants. | No.  16-cv-5949<br><br>**COMPLAINT** |

## INTRODUCTION

1.   This civil rights class action lawsuit challenges the failure of the State University of New York at Purchase College ("SUNY Purchase") to provide students and visitors with mobility disabilities full and equal access to the vast array of educational and cultural programs, activities, and services it provides the non-disabled public.

2.   SUNY Purchase is a public four-year college located in Westchester County, New York.  The college hosts both conservatory-based arts programs and traditional liberal arts and sciences programs.  It also serves as a cultural hub in the area, welcoming visitors to its Performing Arts Center and the Neuberger Museum of Art, as well as hosting a wide variety of classes, camps, and events for area residents and their children.

3.   SUNY Purchase has not provided or maintained equal access to its campus for persons with mobility disabilities.  Widespread barriers obstruct access to pedestrian rights-of-way, making it both unsafe and difficult for persons with mobility disabilities to navigate safely and independently between the parking lots, academic buildings, dining facilities, Library, Performing Arts Center, and Neuberger Museum.  Among other barriers, pedestrians navigating the campus encounter uneven and crumbling pavement, hazardously steep slopes, excessively long paths of travel, and missing or inadequate vertical access or directional signage.

4.   By failing to maintain accessible pedestrian rights-of-way, SUNY Purchase has failed to provide meaningful access for persons with mobility disabilities to its numerous educational and cultural programs, activities, and services, in violation of the Americans with Disabilities Act, the Rehabilitation Act, and the New York State Human Rights Law.

## **JURISDICTION**

5.   This is an action for declaratory and injunctive relief, brought pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq*.

6.   This Court has subject matter jurisdiction over the ADA and Section 504 claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the NYSHRL claim pursuant to 28 U.S.C. § 1367.

7.   This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

8.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Defendants are located within this District and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

9.   Plaintiff Westchester Independent Living Center (WILC) serves persons with disabilities throughout Westchester County and the Lower Hudson Valley Region.  WILC's main office is located in White Plains, New York.  In the past year, WILC has assisted more than 1,000 consumers with disabilities, including more than 600 in Westchester.  WILC's consumers include students and visitors at SUNY Purchase.

10. WILC is a nonprofit community-based resource, advocacy, and training center dedicated to improving the quality of life of people with disabilities.  WILC's mission is, first, to assist individuals with disabilities to become as independent as they can be, and second, to work within the community to provide education, build awareness, and advocate for the removal of barriers to access.  Barriers impeding access to educational and cultural programs, services, and activities at SUNY Purchase therefore directly impair WILC's mission.

11. As part of its advocacy work, WILC employees support community members who encounter access barriers at SUNY Purchase.  For example, WILC ADA specialist Michael Hellmann has had to visit the campus to assist a student who uses a wheelchair and needed a cart to transport equipment for his photography coursework, but was not being accommodated by the University.

12. WILC is being harmed by the inaccessibility of the pedestrian rights-of-way on the SUNY Purchase campus.  WILC staff members face access barriers when they travel to SUNY Purchase to support students and visitors with disabilities on the campus, and when they attempt to visit cultural attractions, including the Neuberger Museum.

13. Eighty percent of WILC's board members and sixty-five percent of its staff members are persons with disabilities.  WILC board members and staff, as well as the persons with disabilities that WILC serves, are presently being harmed by SUNY Purchase's failure to provide and maintain accessible paths of travel on campus.  WILC board members, staff, and constituents with mobility disabilities are denied meaningful access to SUNY Purchase's educational and cultural programs, services, and activities, and are thus uniquely burdened by SUNY Purchase's failure to address their needs in designing and maintaining its campus.  This failure harms each board member, staff member, and constituent with a mobility disability.

14. Plaintiff Kayle Hill is a qualified person with a disability under all applicable statutes.  Due to severe arthritis, she is unable to walk long distances.  Ms. Hill is a rising junior student at SUNY Purchase, where she must navigate the pedestrian rights-of-way in order to travel between the parking lots, academic buildings, dining facilities, and other campus buildings.  She resides in Westchester County.  Ms. Hill has experienced and continues to experience barriers along these pedestrian rights-of-way.

15. Plaintiff Michael Hellmann is a qualified person with a disability under all applicable statutes.  He uses a wheelchair and a cane for mobility.  He has used a wheelchair each time he has visited the SUNY Purchase campus.  He resides in Westchester County. Mr. Hellmann is an employee of WILC who travels to SUNY Purchase to assist community

members who encounter access barriers.  He also independently visits the Neuberger

Museum of Art and the Performing Arts Center.  He has experienced and continues to

experience barriers along the pedestrian access routes between the visitor parking lots and the

central campus area.

16. The Plaintiff class consists of all persons with mobility disabilities in Westchester

County and the Lower Hudson Valley Region who have been and are being denied

meaningful access to the educational and cultural programs, services, and activities offered

by SUNY Purchase because of Defendants' continuing failure to design, construct, and

maintain pedestrian rights-of-way that are accessible to persons with mobility disabilities.

17. Defendant SUNY Purchase is a four-year college that is part of the State

University of New York public higher education system.  As such, SUNY Purchase qualifies

as a "public entity" within the meaning of Title II of the ADA, as that term is defined under

42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

18. SUNY Purchase receives federal funds subject to the accessibility requirements of

Section 504 of the Rehabilitation Act.

19. SUNY Purchase hosts more than 4,200 students and 450 faculty members at its

25-building, 500-acre campus in Westchester County.  The complex includes classroom

buildings for the School of the Arts, the School of Liberal Arts and Sciences, and the School

of Film and Media Studies, as well as residence halls, dining facilities, administrative

buildings, a bookstore, a gymnasium, a coffee shop, outdoor recreation spaces, and parking

lots.  Senior citizens in the community are permitted to audit classes at SUNY Purchase free

of tuition.  Approximately 2/3 of SUNY Purchase's students live on campus in its residence

halls; 1/3 of students commute to the campus.

20. SUNY Purchase also hosts numerous camps and programs on campus, including an academic summer session for matriculated students, visiting students, and eligible high school students; summer youth and pre-college programs in the arts; and youth summer camps with programs ranging from basketball to circus arts to engineering.

21. The campus includes cultural attractions that are open to the public, including the Neuberger Museum of Art, the Performing Arts Center, and the SUNY Purchase Library.

22. The Neuberger Museum of Art is advertised as the premier museum of modern, contemporary, and African art in Westchester and Fairfield counties. Its permanent collection comprises more than 7,000 objects. In addition, the Museum offers changing exhibitions and public programs such as artist lectures, hands-on workshops, and family festivals. The Neuberger Museum building includes a café and a museum store.

23. The Performing Arts Center at SUNY Purchase is a four-theater complex billed as the major professional, nonprofit arts presenter in the region. Each year, more than 200,000 people attend its more than 650 performances, benefits, and events, including performances by school children heavily attended by parents and grandparents. The Performing Arts Center also offers educational opportunities for SUNY Purchase students as well as K-12 students and multi-generational learners.

24. The SUNY Purchase Library, located at the heart of the campus, offers students access to digital, print, and media resources; listening and viewing facilities; and study spaces. It is also open to the public and is a designated Federal Depository Library. Guests may access print and electronic resources and obtain printed copies of federal government documents.

25. Defendant Thomas Schwarz, sued in his official capacity, is the President of SUNY Purchase.

26. Defendant H. Carl McCall, sued in his official capacity, is the Chairman of the SUNY Board of Trustees.

## FACTUAL ALLEGATIONS

27. In attempting to access the programs, services, and activities at SUNY Purchase, students and visitors with mobility disabilities, including those who use wheelchairs and other mobility devices, encounter pervasive barriers in violation of federal and state disability law.

28. Students and visitors must navigate a network of pedestrian rights-of-way plagued by ADA violations including but not limited to:  A lack of curb ramps; non-compliant curb ramps and cross-walks; paths of travel that are unnecessarily long, have excessive slope, or crumbling concrete or asphalt; inadequate accessible parking; inadequate vertical access to the campus and public buildings; a lack of signage indicating accessibility; failing to provide alternative routes blocked by ongoing construction; non-compliant safety features such as call-boxes; and frequently broken accessibility features such as automatic door openers.

29. Students and visitors with mobility disabilities who encounter these access barriers find it difficult, confusing, frustrating, dangerous, or even impossible to travel to their on-campus destinations.  Such students are prevented from safely and independently attending classes, participating in extracurricular activities, visiting classmates, and otherwise fully participating in campus life.  Visitors with mobility disabilities are discouraged from auditing classes, visiting the Neuberger Museum or Library, or attending performances at the Performing Arts Center.  These barriers deny students and visitors with mobility disabilities

equal access to the educational and cultural facilities, programs, services, and activities offered by SUNY Purchase.

**A.**     **SUNY Purchase's Failure to Install and Maintain Accessible Sidewalks and Paths of Travel for Students and Visitors with Mobility Impairments**

30. SUNY Purchase has failed on a systemic basis to provide and maintain accessible rights-of-way for all students and visitors.

31. Pervasive throughout the campus along paths of travel connecting parking, the campus, and the public buildings, are non-compliant and hazardous curb cuts that fail to comply with the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") standards.  Many curb cuts have excessive slope and cross-slope, contain abrupt changes in elevation, lack the necessary top-landing and tactile warnings, and are unsafe due to uneven and loose or crumbling pavement, creating numerous hazards for persons with mobility disabilities.

32. In many instances, curb cuts are missing altogether, including at the ends of the cross walk spanning the street between the front entrance of the Performing Arts Center and the elevator to the Main Plaza.

33. In addition to non-compliant curb ramps, other barriers along paths of travel substantially impede accessibility and create safety hazards for people who use canes, walkers, or other mobility aids; those at risk of tripping on the uneven surfaces; and for wheelchair users at risk of being thrown when the wheels catch on the loose and uneven surfaces.

34. Attendees to the Performing Arts Center and Neuberger Museum, visitors, and commuting students must primarily park in the W-1 and W-2 parking lots, where approximately 40% of the accessible parking spots are located.  Paths of travel from the W-1

8

and W-2 lots to the campus are riddled with barriers such as level changes, potholes, crumbling asphalt, mid-path obstacles, and gaps in pavement.

35. Many other campus walkways connecting parking lots, the main campus, and public buildings on campus have excessive slope and cross slope impeding the path of travel for people with mobility disabilities.

36. There is no accessible route from the Outback Residence Hall across the quad to the Dining Hall, or to the elevator in the Dining Hall, which provides vertical access to the Main Plaza.

37. Accessible paths of travel are further impeded during the winter months because snow removal is inconsistent and unreliable.

38. Ongoing construction on campus impedes and in some cases totally blocks access and provides no temporary alternative routes and no signage indicating temporary alternative routes of travel.

    **B.**    **Parking Barriers for Students and Visitors with Mobility Disabilities at SUNY Purchase**

39. The main parking lots for visitors and commuting students at SUNY Purchase are designated W-1 and W-2.  The routes from these lots to the main campus and public buildings are excessive and unnecessarily long, lack sufficient vertical access or signage, and are replete with barriers along the paths of travel, such as missing or deficient curb ramps and uneven and crumbling surfaces.

40. Many of the designated accessible spaces in these parking lots, as well as other parking lots on campus, lack appropriate signage and/or an access aisle wide enough to accommodate persons who use wheelchairs.

41. Campus parking lots are missing safe and accessible pathways forcing pedestrians in wheelchairs to travel from their parking spaces to campus buildings behind parked cars, where they are not easily visible and are therefore at risk that vehicles might back into them.

42. In addition to these physical access barriers, SUNY Purchase has failed to adequately train parking enforcement staff regarding the rights of persons with mobility disabilities.  Parking enforcement staff have instructed persons with disabilities who possess the necessary permits seeking to park on campus that they are not permitted to park in designated accessible spaces and have redirected them to parking lots farther from the center of campus.

43. To assist students in navigating the campus and traveling to and from nearby White Plains and Port Chester, SUNY Purchase provides a shuttle bus service, the "Purchase Loop."  This shuttle bus would greatly assist students with disabilities to navigate the current barrier-strewn paths of travel and lack of vertical access, yet the buses are not accessible to wheelchair users.

C.    **Lack of Vertical Access at SUNY Purchase**

44. SUNY Purchase's academic buildings, as well as the Student Services Building, Library, bookstore, and Neuberger Museum, are located on and around a central plaza which is elevated from the street and main parking lot level.  The campus lacks adequate vertical access between the two levels for students and visitors with mobility disabilities, including wheelchair users.

45. For example, there is no clear accessible route for pedestrians traveling between the W-1 and W-2 parking lots and the main plaza.  A pedestrian footpath leading from the

parking lots to the Visual Arts Building is hazardously steep and lacks hand rails, edge

protections, or landings to assist persons with mobility disabilities in navigating the slope.

46. Access to the main exterior elevator from the W-1 and W-2 parking lots to the

main plaza is hindered by unnecessarily long routes of travel, missing and/or insufficient

signage, and missing or deficient and non-compliant curb cuts and paths of travel.

Additionally, the elevator, functionally the sole point of vertical access to the main campus

and public buildings, is often subject to closure due to break-downs, maintenance, and

blocked routes related to the ongoing construction.

47. A potential third route is through an academic building.  However, this is not an

adequate alternative as the building is not generally open to the public nor are the doors

unlocked at all times.  Moreover, the path of travel between the building and the W-1 parking

lot is particularly long and replete with barriers such as missing and non-compliant curb cuts.

Further, there is no directional signage alerting pedestrians that it  potentially provides

vertical access to campus.

48. Pedestrians also encounter barriers navigating between the main plaza and the on-

campus Starbucks coffee shop, located inside one of the student dormitories on the lower

level of campus.  The Starbucks is a central location for meeting, studying, and socializing on

campus, and accepts the student meal plan.  To travel from Starbucks to the main plaza,

pedestrians must navigate a treacherously steep hill.  Although SUNY Purchase has

designated an alternative accessible route through the Student Health Services building, the

route is only available during business hours and requires a pedestrian to summon a Student

Health Services employee to provide access through a locked door.

**D.**     **Access Barriers at the Performing Arts Center**

49. The Performing Arts Center is a multi-story facility containing four different performance spaces.  Only one elevator, located on the east side of the building, provides access between floors.

50. Within the Performing Arts Center, the service counters at which visitors purchase tickets or inquire about performances and programs are too high for wheelchair users to execute ticket purchases or to interact with staff.

51. Inside the performance spaces, the three theaters with permanent seating configurations each include only four designated spaces for persons using wheelchairs.  In each theater, all accessible spaces are located together in the back rows of the orchestra levels.  For certain kinds of performances, these are the worst seats in the house.  Moreover, because the accessible spaces are crowded together, audience members who use wheelchairs have a decreased chance of sitting with companions who do not use wheelchairs, and often face an obstructed view of the stage.

**E.**     **Other Barriers Facing Students and Visitors with Mobility Disabilities at SUNY Purchase**

52. Along pedestrian pathways, drinking fountains and emergency call boxes are out of accessible reach for persons in wheelchairs.

53. Seating areas throughout the main campus lack accessible tables.

54. The student mailroom lacks an accessible service counter or accessible table.

55. When pedestrians with mobility disabilities reach their destinations on campus, they often have difficulty entering buildings independently because many of the automatic doors to campus buildings work only intermittently.  Repairs are not completed in a timely manner.

12

56. Elevators within buildings break down frequently, impeding vertical access within buildings for students and visitors with disabilities.

57. Defendants have failed and are failing to prepare and implement a complete and publicly available transition plan relating to structural changes to be undertaken to achieve program accessibility, as required under federal law. *See* 28 C.F.R. § 35.150(d).

**F.      Harm to Plaintiff WILC**

58. WILC is directly harmed by Defendants' failure to ensure that the SUNY Purchase campus is accessible to persons with disabilities. WILC has expended resources combating accessibility barriers on campus. As a result of discriminatory practices at SUNY Purchase, WILC therefore has fewer resources to dedicate to its other programs. In addition, WILC staff who have mobility disabilities encounter accessibility barriers when they visit SUNY Purchase to pursue WILC's advocacy work. This injury to WILC is ongoing and would be directly redressed by injunctive and declaratory relief.

59. WILC's consumers who have mobility disabilities are directly harmed by Defendants' failure to ensure that the SUNY Purchase campus is accessible to persons with disabilities, in that they are deprived of meaningful access to its educational and cultural programs, activities, and services.

**G.      Harm to Plaintiff Hill**

60. Plaintiff Kayle Hill is a rising junior student at SUNY Purchase. Due to psoriatic arthritis, Ms. Hill experiences daily pain and fatigue and is frequently unable to climb stairs or steep hills without experiencing severe pain. As a result, she has difficulty traveling around the campus. In particular, Ms. Hill struggles to climb the steep hill connecting the Starbucks coffee shop with the main plaza and the Terra Ve cafeteria. After climbing this

slope, she experiences pain, extreme fatigue, and heart palpitations.  In addition, she has difficulty reaching her classes and other on-campus destinations because elevators are so frequently out of order, and there is no one to call for assistance.  In the winter, it is challenging for her to navigate the campus safely because pedestrian rights-of-way are not consistently shoveled and plowed and, due to her history of back surgery, she cannot risk slipping and falling on snow and ice.  Every day, Ms. Hill has to devote significant time and energy to figuring out how she will navigate the campus.

61. When no accessible path is available, Ms. Hill often drives between locations on campus.  She has provided documentation of her disability to SUNY Purchase and received a campus parking pass that permits her to park in designated accessible spaces.  She also has a state-issued parking pass for the disabled.  On several occasions, when she has parked in a space designated for persons with disabilities, she has been issued a parking ticket or challenged by parking enforcement personnel who state that she should park elsewhere because she "does not look disabled."  Staff have accused her of abusing her parking pass. These confrontations with parking enforcement personnel cause Ms. Hill serious distress, and have resulted in her missing class.

### H.     Harm to Plaintiff Hellmann

62. Plaintiff Michael Hellmann is an ADA specialist at WILC.  He uses a wheelchair and a cane for mobility.  He has used a wheelchair each time he has visited the SUNY Purchase campus.  Mr. Hellmann's job duties require him to be available to travel within the SUNY Purchase campus to assist persons with disabilities who encounter access barriers.  He also visits the Neuberger Museum and Performing Arts Center independently.

14

63. During his visits to SUNY Purchase, Mr. Hellmann has found that the pavement in the visitor parking lots is full of potholes and cracks and is therefore difficult to comfortably navigate in a wheelchair.  In addition, because there are no clear pedestrian pathways from the accessible spaces through the parking lots to the campus buildings, he is required to travel behind parked cars, where he is not easily visible and is therefore at risk that vehicles might back into him.  Mr. Hellmann has experienced difficulty traveling from the parking lots to the plaza level independently because of a lack of vertical access.  While on campus, he has traveled from the visitor parking lots to the main plaza using the pedestrian pathway.  He has found that the curb cut connecting the hill to the parking lot is unstable.  In addition, because the pathway is excessively steep and lacks a handrail, landings, and edge protections, Mr. Hellmann experiences difficulty reaching the plaza level without assistance and is exhausted when he reaches the top of the slope.  Mr. Hellmann has seen no signage directing him to an alternative accessible route to the plaza level.

64. Mr. Hellmann recently attended a film at the PepsiCo theater in the Performing Arts Center.  As described above, the path of travel from the parking lots to the Performing Arts Center is treacherous for wheelchair users, and there are no curb cuts in the crosswalk connecting the two sides of the Performing Arts Center.  When Mr. Hellmann entered the Performing Arts Center, he found that the theater was at the top of a flight of stairs, and there were no signs indicating an accessible route.  Mr. Hellmann's companion, who does not use a wheelchair, climbed the stairs to obtain directions from a staff member.  Even though Mr. Hellmann arrived in plenty of time for the performance, the time it took to obtain directions, exit and re-enter the building in order to find and access the elevator, and then locate the theater, all without the benefit of directional signage, meant that he almost missed the

15

beginning of the show.  Moreover, the designated accessible seating in the theater was inadequate and uncomfortably cramped; Performing Arts Center staff assigned two wheelchair users and five companions in folding chairs to occupy a space designed to accommodate four people.

## CLASS ALLEGATIONS

65. Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action for injunctive and declaratory relief on their own behalf and on behalf of all persons similarly situated.  Plaintiffs seek to represent a class of all persons with mobility disabilities who use and/or will use pedestrian rights-of-way at SUNY Purchase.  The claims asserted herein are solely for injunctive and declaratory relief for the class.  Damages claims are not included in this complaint.

66. The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and to the Court.  The class includes all students with mobility disabilities at SUNY Purchase, as well as visitors to the Neuberger Museum, Library, and Performing Arts Center, prospective students, and other guests.

67. There is a well-defined community of interest in the questions of law and fact affecting the parties to be represented in that they are all being denied, or will be denied, their civil rights and meaningful access to the educational and cultural programs available at SUNY Purchase, due to the barriers described herein.

68. Common questions of law and fact predominate, including questions raised by Plaintiffs' allegations that by failing to maintain accessible routes of travel, Defendants have failed to provide meaningful access to SUNY Purchase's educational and cultural programs,

services, and activities to persons with mobility disabilities in violation of Title II of the

ADA and Section 504.  The common questions raised by Plaintiffs are capable of class-wide

resolution.

69. Plaintiffs are adequate class representatives because they and the persons they

represent are directly affected by Defendants' failure to provide program access to persons

with mobility disabilities at the SUNY Purchase campus.  The interests of the Plaintiffs are

not antagonistic to, or in conflict with, the interests of the class as a whole.  The attorneys

representing the class are experienced in representing plaintiffs in civil rights class actions

for injunctive relief, including actions challenging barriers to access involving pedestrian

rights-of-way.

70. Plaintiffs' claims are typical of the claims of the class as a whole because the

Plaintiffs are similarly affected by Defendants' failure to provide meaningful access to the

educational and cultural programs available at SUNY Purchase.

71. Defendants have acted and/or failed to act on grounds generally applicable to all

class members, thereby making final declaratory and injunctive relief with respect to the

class as a whole appropriate.

**FIRST CAUSE OF ACTION**
**VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C. § 12131 *ET SEQ.*)**

72. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the

Complaint.

73. Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132,

provides that "no qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

74. The term "disability" includes physical and mental impairments that substantially limit one or more major life activities, such as walking.  42 U.S.C. § 12102(1)-(2).  A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

75. Plaintiffs, many consumers, board members and staff of the organizational Plaintiff, and the members of the class are persons with disabilities within the meaning of the statute in that they have impairments which substantially limit one or more major life activities, such as walking.  They are also qualified in that they are students of or visitors to SUNY Purchase, and thus are eligible to benefit from the College's educational and cultural programs.  Plaintiffs, many consumers, board members and staff of the organizational Plaintiff, and the members of the class are therefore qualified individuals with disabilities within the meaning of 42 U.S.C. §§ 12102, 12131, and 28 C.F.R. § 35.104.

76. A "public entity" includes any state or local government and its agencies, departments, and instrumentalities.  42 U.S.C. § 12131(1).  Defendant State University of New York at SUNY Purchase is a public entity within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104.

77. Title II of the ADA requires public entities, including Defendants, to operate each of their programs, services, or activities so that "when viewed in its entirety, [it] is readily

accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150; *see also* 28 C.F.R. §§ 35.149 & 35.151.  In the event that structural changes to facilities must be undertaken to achieve program accessibility, public entities such as SUNY Purchase must develop "a transition plan setting forth the steps necessary to complete such changes," provide an opportunity for interested persons and groups to participate in the development of the plan, and make a copy of the plan available for public inspection.  28 C.F.R. § 35.150(d). The plan must "include a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs." 28 C.F.R. § 35.150(d)(2).

78. In addition, a public entity must "provide signage at all inaccessible entrances to each of its facilities, directing users to an accessible entrance or to a location at which they can obtain information about accessible facilities.  The international symbol for accessibility shall be used at each accessible entrance of a facility." 28 C.F.R. § 35.163(b).  It must "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. § 35.133(a).  A public entity's temporary facilities, including "temporary safe pedestrian passageways around a construction site," must be accessible to persons with disabilities.  28 C.F.R. 36 App. D. 4.1.1(4).  Accessibility requirements also extend to "[t]ransportation systems operated by public institutions of higher education." 49 C.F.R. § 37.25.

79. Due to pervasive access barriers on the SUNY Purchase campus, Defendants have failed to provide individuals with mobility disabilities meaningful access to the educational and cultural programs, services, and activities offered by the College, in violation of Title II of the ADA.

80. As a direct and proximate result of the aforementioned acts, Plaintiffs have been and continue to be injured.

81. Defendants' conduct constitutes an ongoing and continuous violation of Title II of the ADA and, as a result, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees, expenses, and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**SECOND CAUSE OF ACTION**
**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**
**(29 U.S.C. § 794)**

82. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

83. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provides, in pertinent part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).

84. Plaintiffs, many consumers, board and staff members of the organizational Plaintiff, and members of the class are otherwise qualified individuals with disabilities within the meaning of the statute in that they have impairments which substantially limit one or more major life activities, such as walking, and have reason to and are otherwise eligible to participate in Defendants' educational and cultural programs at SUNY Purchase.  *See* 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102); *see also* 28 C.F.R. § 39.103.

85. Defendants have received federal financial assistance at all times relevant to the claims asserted in this Complaint.

20

86. Defendants have violated and continue to violate Section 504 and the regulations promulgated thereunder.  By failing to remediate the pervasive access barriers on campus, Defendants exclude Plaintiffs from participation in Defendants' programs and activities, deny Plaintiffs the benefits of those programs and activities, and subject Plaintiffs to discrimination, solely by reason of their disabilities.

87. As a direct and proximate result of Defendants' aforementioned conduct, Plaintiffs and members of the class have been injured, and continue to be injured.

88. Defendants' conduct constitutes an ongoing and continuous violation of Section 504 and, as a result, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees, expenses, and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
### (N.Y. EXEC. LAW § 290 *ET SEQ.*)

89. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

90. The New York State Human Rights Law ("NYSHRL") provides that

> [i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof.

N.Y. Exec. Law § 296(2)(a).

91. The term "person" in the NYSHRL includes "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers."  N.Y. Exec. Law § 292(1).

92. The term "place of public accommodation, resort or amusement" in the NYSHRL includes, "regardless of whether the owner of operator of such place is a state or local government entity or a private individual or entity, . . . wholesale and retail stores and establishments dealing with goods or services of any kind, . . . theatres, . . . music halls, . . . public halls, public rooms, public elevators, and any public areas of any building or structure."  As such, cultural attractions including the Performing Arts Center, Library, and Neuberger Museum are places of public accommodation within the meaning of the NYSHRL.  N.Y. Exec. Law § 292(9).

93. The term "disability" in the NYSHRL means "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques."  N.Y. Exec. Law § 292(21)(a).  Plaintiffs, many consumers, board members and staff of the organizational plaintiff, and members of the class are persons with disabilities within the meaning of the NYSHRL.

94. Defendants, as persons under the statute and managers of the Performing Arts Center, Library, and Neuberger Museum, have withheld from and denied persons with mobility disabilities the accommodations, advantages, facilities, and privileges of those attractions by failing to maintain accessible pedestrian rights-of-way on campus.

95. Through the conduct described above, Defendants have committed unlawful discriminatory practices against Plaintiffs and have violated the NYSHRL.

96. As a direct and proximate result of Defendants' aforementioned conduct, Plaintiffs and members of the class have been injured, and continue to be injured.

97. Defendants' conduct constitutes an ongoing and continuous violation of the NYSHRL and, as a result, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees, expenses, and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION
## DECLARATORY RELIEF

98. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

99. Plaintiffs contend that Defendants have failed and are failing to comply with applicable laws prohibiting discrimination against persons with disabilities in violation of Title II of the ADA, 42 U.S.C. § 12131 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and the NYSHRL, N.Y. Exec. Law § 290 *et seq*.

100.    Plaintiffs contend, and are informed and believe, that Defendants deny failing to comply with applicable laws prohibiting discrimination against persons with disabilities.

101.    A judicial declaration is necessary and appropriate at this time in order that the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows, including but not limited to:

1.   An order certifying this matter as a class action, defining the class as set forth above, appointing Plaintiffs class representatives, and appointing their attorneys class counsel;

2.   A declaration that Defendants' conduct as alleged herein has violated and continues to violate Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the NYSHRL;

3.   An order and judgment enjoining Defendants from violating Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the NYSHRL, and requiring Defendants to develop and implement a remedial plan to remedy such violations in order to provide meaningful access to the educational and cultural programs, services, and activities offered at SUNY Purchase;

4.   Plaintiffs' reasonable attorneys' fees and costs; and

5.   Such other and further relief as the Court deems just and proper.

Dated:  July 26, 2016          Respectfully submitted,
        New York, New York

                               DISABILITY RIGHTS ADVOCATES


                               _____
                               Michelle Caiola
                               Christina Brandt-Young
                               DISABILITY RIGHTS ADVOCATES
                               675 Third Avenue, Suite 2216
                               New York, NY  10017
                               Tel:  (212) 644-8644
                               Fax:  (212) 644-8636

                               Freya Pitts*
                               DISABILITY RIGHTS ADVOCATES
                               2001 Center Street, Fourth Floor
                               Berkeley, CA 94704-1204
                               Tel:  (510) 665-8644
                               Fax:  (510) 665-8511

                               *Attorneys for Plaintiffs*

                               *Motion for admission *pro hac vice* pending*

24