UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
WESTCHESTER INDEPENDENT LIVING
CENTER, INC., a nonprofit organization; KAYLE
HILL, an individual; TERESA WHEELER, an
individual; and MICHAEL HELLMAN, an
individual; on behalf of themselves and all others
similarly situated,

                     Plaintiffs,

    - against -

STATE UNIVERSITY OF NEW YORK,
PURCHASE COLLEGE; THOMAS J.
SCHWARZ, in his official capacity as President of
Purchase College; and H. CARL MCCALL, in his
official capacity as Chairman of the State
University of New York Board of Trustees,

                     Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 16-CV-5949 (CS)

Appearances:

Michelle Caiola
Andrea Kozak-Oxnard
Disability Rights Advocates
New York, New York
*Counsel for Plaintiffs*

D. Stan O'Loughlin
Office of the Attorney General of the State of New York
New York, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is the Motion for Class Certification of Plaintiffs Westchester

Independent Living Center, Inc. ("WILC"), Kayle Hill, Michael Hellmann, and Teresa Wheeler

(collectively, "Plaintiffs"). (Doc. 125.)

# I. BACKGROUND

## A. Facts[1]

### 1. The Campus

Defendants State University of New York, Purchase College ("SUNY Purchase"),
Thomas J. Schwarz, and H. Carl McCall (collectively, "Defendants"), operate a 500-acre college
campus (the "Campus") in Westchester County that hosts more than 4,200 students and 450
faculty members. (Doc. 96 ("FAC") ¶¶ 20, 26-27.) Additionally, SUNY Purchase welcomes
numerous guests on the Campus each year, including senior citizens who can audit classes free
of tuition, visiting students and eligible high school students participating in academic summer
sessions and youth and precollege programs, and visitors to SUNY Purchase's Neuberger
Museum of Art, Performing Arts Center ("PAC"), and library. (*Id.* ¶¶ 20-22.) The Campus
contains twenty-five buildings, including, among other things, academic buildings, residence
halls, and dining facilities. (*Id.* ¶ 20.) Approximately two-thirds of SUNY Purchase's students
live on Campus in its residence halls, and approximately one-third of students commute to
Campus. (*Id.*) The Campus also includes numerous parking lots for students, faculty, and other
visitors. (*See id.*)

Plaintiffs allege that as a result of Defendants' systemic failure to provide accessible
rights-of-way, students and visitors with mobility disabilities, including but not limited to those
who use wheelchairs or other mobility devices, encounter pervasive barriers that prevent them

---

[1] "When considering a motion for class certification, courts accept the allegations in the
complaint as true. And a court may consider material outside the pleadings in determining the
appropriateness of class certification." *Heredia v. Americare, Inc.*, No. 17-CV-6219, 2018 WL
2332068, at *2 (S.D.N.Y. May 23, 2018) (citation omitted). Accordingly, the facts presented
here come from Plaintiffs' First Amended Complaint and evidence submitted by both parties in
connection with this motion.

from having meaningful access to the programs, services, and activities at SUNY Purchase, in violation of federal and state disability discrimination laws. (*See id.* ¶ 28.) Plaintiffs specifically allege that students and visitors must navigate a network of pedestrian rights-of-way plagued with barriers such as a lack of curb ramps; noncompliant curb ramps and cross-walks; paths of travel that are unnecessarily long, have excessive slope, or include crumbling concrete or asphalt; inadequate accessible parking; inadequate vertical access to the Campus and public buildings; a lack of signage indicating accessibility; lack of alternative routes, some of which were blocked by ongoing construction; noncompliant safety features such as call-boxes; and frequently broken accessibility features such as automatic door openers. (*Id.* ¶ 29.)

### 2. Named Plaintiffs

Plaintiff Wheeler is a student at SUNY Purchase who has a mobility disability that affects her ability to walk long distances or walk up stairs. (Doc. 131 ("Wheeler Decl.") ¶¶ 2-3.) Wheeler was, among other things, unable to attend shows at the PAC, (*Id.* ¶¶ 5-7), take the Loop shuttle on Campus, (*id.* ¶ 13), and get to classes and the dining hall on multiple occasions, (*id.* ¶¶ 8-9, 16-18), all due to her disability.

Plaintiff Hill, a recent graduate of SUNY Purchase, has a mobility disability that prevents her from climbing stairs or steep hills or walking long distances. (Doc. 130 ("Hill Decl.") ¶¶ 3-4.) She alleges that, as a student, she experienced significant barriers throughout the Campus. (*Id.* ¶ 7.) For example, the only route to certain classrooms was over a steep hill, and climbing the hill caused her severe pain and fatigue that prevented her from going to class. (*Id.* ¶¶ 11-13.) Additionally, frequent elevator outages, lack of accessible routes due to construction and inclement weather, and lack of access to accessible parking spaces caused Hill to miss classes, among other things. (*Id.* ¶¶ 15-19, 30-31.)

Plaintiff Hellman has a mobility disability that requires him to use a wheelchair and a cane to get from place to place. (Doc. 129 ("Hellman Decl.") ¶ 3.) He is also the Americans with Disabilities Act Coordinator at WILC. (*Id.* ¶ 4.) Hellman visits the PAC in his personal capacity and visits the SUNY Purchase Campus in his professional capacity as a representative of WILC. (*Id.* ¶¶ 5-6.) In June 2016, Hellman visited the Campus, but due to the lack of accessible routes from any parking lot to the main plaza, Hellman was unable to see all of the main plaza or visit the library, dormitories, and Neuberger Museum. (*Id.* ¶¶ 7, 12-13.) On another occasion that same month, Hellman saw a show at the PAC, but the theater placed seven people in an accessible seating area designed to accommodate only four individuals. (*Id.* ¶¶ 14, 18.) As a result, Hellman had to be moved in and out of the seating area each time another patron entered the theater late. (*Id.* ¶ 18.) Hellman also alleges that he saw other people with wheelchairs and other mobility aids having difficulty getting out of the theater after the show ended. (*Id.* ¶ 19.) Hellman alleges that there were numerous other barriers throughout the Campus, (*see id.* ¶¶ 20-39), and states that he has been dissuaded from returning to the Campus due to the barriers that he is likely to face, (*id.* ¶¶ 40-42).

WILC is a peer-driven, community-based organization that helps people with disabilities to lead self-directed lives in the community through advocacy, training, and referrals to resources that promote independent living. (Doc. 128 ("Bravo Decl.") ¶ 4.) Approximately eighty percent of WILC's board members and sixty-five percent of its staff have a disability, (*id.* ¶ 6), including Joe Bravo, the Executive Director of WILC, and Lisa Tarricone, the Director of Systems Advocacy at WILC, both of whom use a wheelchair, (*id.* ¶¶ 3-4; Doc. 134 ("Tarricone Decl.") ¶¶ 3-4). More than 1,400 of WILC's consumers live in Westchester County, and WILC has received reports from their consumers about significant barriers on the SUNY Purchase Campus

due to inaccessible paths of travel.  (Bravo Decl. ¶¶ 7, 9-10.)  Additionally, WILC employees

and board members with mobility disabilities have been deterred from visiting the Campus due

to its inaccessibility.  (*Id.* ¶¶ 20-21.)

### 3.    Additional Students and Visitors With Mobility Disabilities

Plaintiffs allege, based on documents provided by Defendants in discovery, that during

the 2017-2018 academic year, thirteen SUNY Purchase students self-identified as having a

mobility disability.  (Doc. 126 ("P's Mem.") at 14; Doc. 127 ("Caiola Decl.") Ex. I at 2.)  SUNY

Purchase considers those "who[] typically must use a standard manual or electric wheelchair or

other assistive devices (walker, crutches, braces, prosthesis, etc.) to move from place to place" as

having mobility disabilities.  (Doc. 181 ("Rodriguez Decl.") Ex. A at SUNY06445.)  Thus,

SUNY Purchase would seem to exclude from that count individuals who do not use mobility aids

but still have trouble walking long distances or up slopes and stairs.  Defendants contend that the

figure above reflected coding errors,[2] and only five students during the 2017-2018 academic year

had mobility disabilities.  (Rodriguez Decl. ¶ 8.)  Based on Defendants' statement that Plaintiff

Wheeler never "identif[ied] as a mobility-impaired person," (Doc 185 ("Ds' Opp.") at 10), it

seems that she is not accounted for in either Plaintiffs' or Defendants' calculations.

Plaintiffs also assert that fourteen students self-identified as having orthopedic disabilities

and ninety-five self-identified as having basic chronic medical conditions, many of whom may

have mobility disabilities.  (Ps' Mem. at 14; Caiola Decl. Ex. I at 2.)  Defendants again say that

that figure was determined in error and that there were in fact seventeen students with an

orthopedic disability.  (Rodriguez Decl. ¶ 8.)  Defendants further explain that students with a

---

[2] For example, some students with a "Neurodevelopmental/Motor" disability were
mistakenly coded as having a "Physical/Mobility" disability.  (Rodriguez Decl. ¶ 7.)

mobility disability "must be counted in another category, such as orthopedic or basic or complex chronic medical conditions," (*id.* ¶ 10 (emphasis omitted)), and thus a student with a mobility disability would necessarily be included in another category such as orthopedic disability or basic chronic medical condition, (*id.*). Defendants also assert that a majority of the students with a basic chronic medication condition have allergies or asthma, and only seven have a condition that could affect mobility. (*Id.* ¶ 11.)

Plaintiffs assert that beyond the named Plaintiffs and the students from the 2017-2018 academic year with mobility disabilities, there are "dozens, if not hundreds," of Westchester County residents with mobility disabilities who have visited or attempted to visit the Campus but have faced barriers. (Ps' Mem. at 15-16.) Plaintiffs explain that nearly 52,000 residents of Westchester County have a disability, and many thousands of them are likely to have mobility disabilities, considering approximately 16.2% of all adults nationwide have a mobility disability. (*Id.* at 16 & n.12 (citing Danielle M. Taylor, U.S. Census Bureau, Americans with Disabilities: 2014 at 21 (Nov. 2018), https://www.census.gov/content/dam/Census/library/publications/2018/demo/p70-152.pdf).) Further, during the 2015-2016 academic year alone, there were 18,503 visitors to the Neuberger Museum and 97,018 tickets were sold for shows at the PAC, (Caiola Decl. Exs. CC at SUNY01668, DD at SUNY01679). Indeed, based on documents provided by Defendants in discovery, some visitors to the museum and PAC had mobility disabilities, (*see, e.g.*, *id.* Exs. N, U, X, AA).

### B.   Procedural History

On July 26, 2016, Plaintiffs filed their original class action Complaint, (Doc. 1), and Defendants answered on October 27, 2016, (Doc. 22). On May 22, 2017, after limited discovery was exchanged, Magistrate Judge Judith C. McCarthy stayed any further discovery so that the

parties could discuss settlement.  (Minute Entry dated May 22, 2017.)  Nearly a year later, on

April 17, 2018, the parties still had not reached a settlement, and Judge McCarthy lifted the

discovery stay.  (Minute Entry dated Apr. 17, 2018.)  On July 18, 2018, Plaintiffs moved for

leave to amend their Complaint, (Doc. 87), which Judge McCarthy granted, (Doc. 88), and on

July 26, Plaintiffs filed their FAC.  In their FAC, Plaintiffs seek injunctive and declaratory relief

on their own behalf and on behalf of a class of all people with mobility disabilities who use or

will use pedestrian rights-of-way at SUNY Purchase.  (FAC ¶ 72; *id.* at 23-24.)  Plaintiffs do not

seek damages.

On December 19, 2018, Plaintiffs moved for class certification.  (Doc. 125.)  After three

extensions, Defendants filed their opposition to Plaintiffs' motion on March 14, 2019, (Ds'

Opp.),[3] and Plaintiffs filed their reply shortly thereafter, (Doc. 190 ("Ps' Reply")).

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 23(a), class certification is appropriate only

where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the class.

---

[3] In Defendants' third extension request, they also requested leave to submit a
memorandum of law of not more than thirty-five pages (ten pages longer than the page limit in
my Individual Practices).  (Doc. 172 at 2.)  I granted Defendants' request for an extension, but
my Order said nothing regarding whether they were permitted ten additional pages for their brief.
(*See* Doc. 174.)  Defendants' opposition brief was thirty-five pages despite the absence of
explicit authorization.  Defendants' use of ten extra pages seems unnecessary considering that
they spend significant space on merits issues that they argue relate to class certification, but
which are plainly beyond that scope.  But because I did grant Defendants' application for an
extension, and Defendants could have been reasonably mistaken in their belief that I granted
their request for extra pages as well, I will consider Defendants' entire brief.

Fed. R. Civ. P. 23(a). Courts have also recognized an implied requirement of ascertainability – *i.e.*, that there be an identifiable class. *See Jeffries v. Pension Tr. Fund of Pension, Hospitalization & Benefit Plan of Elec. Indus.*, No. 99-CV-4174, 2007 WL 2454111, at *11, *14 (S.D.N.Y. Aug. 20, 2007) (implied requirement of "ascertainability" requires that plaintiff identify existence of aggrieved class); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 336-37 (S.D.N.Y. 2002) ("[A] requirement that there be an identifiable class has been implied by the courts.") (internal quotation marks omitted).

If the requirements of Rule 23(a) are met, I must then determine whether the class is "maintainable" as defined by Rule 23(b). *Jeffries*, 2007 WL 2454111, at *15; *see* Fed. R. Civ. P. 23(b). Where a putative class seeks certification pursuant to Rule 23(b)(2), a plaintiff must show that "the party opposing the class has acted or refused to act on grounds that generally apply to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The putative class carries the burden of establishing by a preponderance of the evidence that each of the requirements of Rule 23 is met. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *In re Initial Pub. Offerings Sec. Litig.* ("*In re IPO*"), 471 F.3d 24, 41 (2d Cir. 2006). This determination involves a "'rigorous analysis,'" designed to ensure "'actual, not presumed, conformance,'" with Rule 23. *In re IPO*, 471 F.3d at 29 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982)). "[T]he Court's task at the Rule 23 stage is not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendants'] ultimate liability are provable in common.'" *Suvill v. Bogopa Serv. Corp.*, No. 11-CV-3372, 2014 WL 4966029, at *9 (E.D.N.Y. Sept. 30, 2014) (alteration in original) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010)).

In evaluating whether all of these requirements are met, a court may consider merits issues. *See, e.g.*, *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013). Nevertheless, a district judge "should not assess any aspect of the merits unrelated to a Rule 23 requirement." *In re IPO*, 471 F.3d at 41. In other words, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *see Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 43 (S.D.N.Y. 2018). Ultimately, however, the district court has broad discretion in deciding how and whether to certify a class arising from its "inherent power to manage and control pending litigation." *Myers*, 624 F.3d at 547 (internal quotation marks omitted).

## III.   DISCUSSION

Plaintiffs seek certification of a class consisting of "students and visitors with mobility disabilities who have been and are being denied meaningful access to the educational, cultural, and social programs, services, and activities offered at SUNY Purchase because of Defendants' continuing failure to provide accessible rights-of-way." (Doc. 125 at 1.)

### A.   Numerosity

The numerosity element is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Generally speaking, courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998); *see Siler v. Landry's Seafood House – N.C., Inc.*, No. 13-CV-587, 2014 WL 2945796, at *2 (S.D.N.Y. June 30, 2014) (collecting cases). But

"[t]here is no magic minimum number that establishes numerosity, and courts have certified classes with as few as 14 members." *U.S. Fid. & Guar. Co. v. Madison Fin. Corp.*, No. 01-CV-3998, 2002 WL 31731020, at *6 (S.D.N.Y. Dec. 4, 2002). "[T]he numerosity inquiry is not strictly mathematical but must take into account the context of the particular case." *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). Accordingly, "where the putative class seeks injunctive and declaratory relief pursuant to Rule 23(b)(2)," as opposed to monetary relief under Rule 23(b)(3) "the Second Circuit has relaxed the numerosity requirement." *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001); *see Abdi v. Duke*, 323 F.R.D. 131, 140 (W.D.N.Y. 2017) ("[S]maller classes are less objectionable where the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members.") (internal quotation marks and alterations omitted).

Plaintiffs argue that the class is so numerous that joinder is impracticable because the putative class includes current and future students, as well as alumni who plan to return to Campus, and while those class members have not been identified, they certainly number more than forty. (Ps' Mem. at 14.) I agree. Plaintiffs have named three individual Plaintiffs, submitted declarations of six other individuals with mobility disabilities that visited Campus, and pointed to at least five, and potentially thirteen, students who self-reported as having mobility disabilities in a single academic year. (*See* Rodriguez Decl. ¶ 8; Caiola Decl. Ex. I at 2.) Further, it is a near certainty that the number of students self-reporting as having mobility disabilities is lower than the true number. As Defendants themselves state, Plaintiff Wheeler did not self-report her mobility disability, (Ds' Opp. at 10), yet had one and, among other things, missed classes due to barriers on the Campus, (Wheeler Decl. ¶¶ 16-18).

Additionally, Plaintiffs submitted documentation that establish non-named Plaintiffs with mobility disabilities visited Campus or attempted to do so but were unsuccessful because of accessibility barriers. (*See, e.g.*, Caiola Decl. Ex. N at SUNY03322 (explaining that handicapped door was locked on night of event despite presence of disabled patrons at PAC show); *id.* Ex. U (mobility-disabled patron unable to attend show at PAC due to inaccessibility); *id.* Ex. V (individual using wheelchair visited Neuberger Museum but could not find any signs regarding accessible routes or entrances); *id.* Ex. X (Campus visitor stating "[i]t will be very difficult if not impossible for a handicapped/disabled person to access the newly constructed library or student services building"); Ex. AA (complaints about PAC not being accessible). While some of these individuals were able to overcome the barriers and visit the intended areas on Campus, that does not change the fact that Plaintiffs have provided considerable evidence that numerous people with mobility disabilities, beyond those already identified, visit or visited Campus and try or tried to access buildings that Plaintiffs have alleged are inaccessible. Such evidence plainly suggests that the putative class contains over forty individuals.

Further, Plaintiffs have provided statistical data from which I can reasonably infer that more than forty individuals would be part of the class. Courts within this Circuit have frequently relied on reasonable inferences based on statistical data to establish numerosity. *See Williams v. Conway*, 312 F.R.D. 248, 252 (N.D.N.Y. 2016) (reasonable inference that 0.14% of prison population is profoundly deaf because 0.14% of total population is profoundly deaf); *Hernandez v. AutoZone, Inc.*, 323 F.R.D. 496, 502 (E.D.N.Y. 2018) (percentage of Americans who use a wheelchair, cane, crutches, or a walker and number of individuals who visit defendant's store lead to reasonable inference that numerosity is satisfied); *Toney-Dick v. Doar*, No. 12-CV-9162, 2013 WL 5295221, at *5 (S.D.N.Y. Sept. 16, 2013) ("Plaintiffs' extrapolations from the data

provided [regarding New York City's community of individuals with disabilities] persuades the Court by a preponderance of the evidence that there are at least 40 members of the proposed class"); *Cortigiano v. Oceanview Manor Home For Adults*, 227 F.R.D. 194, 204 (E.D.N.Y. 2005) (plaintiffs established numerosity based on publicly available census data); *Maneely v. City of Newburgh*, 208 F.R.D. 69, 74 (S.D.N.Y. 2002) (plaintiffs established numerosity based on estimates from statistical data); *see also A.T. ex rel. Tillman v. Harder,* 298 F. Supp. 3d 391, 407 (N.D.N.Y. 2018) ("[C]onclusions drawn from statistical data have been found sufficient for purposes of class certification so long as they are demonstrably reasonable ones."). *But see Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) (plaintiffs' assertion of numerosity based on census data was too speculative.)[4] Here, Plaintiffs provided census data establishing that approximately 16.2% of the population has mobility disabilities. (Ps' Mem. at 16 n.12; Taylor, *supra* at 21.). Plaintiffs also presented evidence that more than 18,000 people visit the Neuberger Museum each year, and more than 90,000 tickets are sold annually for shows at the PAC. (Caiola Decl. Exs. CC at SUNY01668, DD at SUNY01679.) Taking the Neuberger Museum guests alone, even if only 1.6% of them had mobility disabilities, a tenth of the national average, that would still mean 288 visitors each year have mobility disabilities. And that number

---

[4] The Third Circuit in *Mielo* rejected the use of census data to establish numerosity where the plaintiffs "presented no evidence that would permit [the court] to use 'common sense' to determine – rather than speculate about – the portion of those disabled individuals who have actually patronized a relevant Steak 'n Shake restaurant." *Mielo*, 897 F.3d at 486. Putting aside the fact that Third Circuit law is not binding here and is contradicted by cases from this Circuit, I do not find the instant case similar to *Mielo*. As opposed to plaintiffs there, Plaintiffs here establish, without relying on census data, that some unnamed putative class members have mobility disabilities and visited or attempted to visit the SUNY Purchase Campus. (*See* Caiola Decl. Exs. N, U, X, AA.) Thus, statistical data are not the sole basis for establishing numerosity, but instead are part of a constellation of facts that establishes by a preponderance of the evidence that there are at least forty class members.

does not take into account potential PAC guests, individuals who audit classes, or other Campus visitors.

While Defendants are correct that numerosity cannot be based on "pure speculation or bare allegations," *Oladapo v. Smart One Energy, LLC*, No. 14-CV-7117, 2017 WL 5956907, at *8 (S.D.N.Y. Nov. 9, 2017) (internal quotation marks omitted), *report and recommendation adopted*, 2017 WL 5956770 (S.D.N.Y. Nov. 30, 2017), Plaintiffs have provided more than that here. Plaintiffs have identified three named Plaintiffs, six declarants, and at least five students during the 2017-2018 academic term who would be class members. Further, Plaintiffs have provided documents from Defendants themselves that establish there are additional visitors who would be in the class, and Plaintiffs have relied on census data to reasonably infer that the number of class members far exceeds forty. Accordingly, I find that Plaintiffs have satisfied the numerosity requirement.

Defendants' arguments to the contrary do not change my analysis. Defendants first argue that Plaintiffs have "concretely identif[ied] 11 putative class members" and only did so two-and-a-half years after initiating the litigation, suggesting that Plaintiffs will never be able to identify forty or more class members. (*See* Ds' Opp. at 15.) First, Plaintiffs have noted that they could identify more class members by name if Defendants had not redacted names out of certain documents they produced. (Ps' Mem. at 15 n.9; Ps' Reply at 2 n.2.) Second, "(b)(2) is meant for classes whose members are incapable of specific enumeration," *Floyd v. City of N.Y.*, 283 F.R.D. 153, 172 (S.D.N.Y. 2012); *see Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement"), and therefore Plaintiffs' inability to specifically identify additional class members is not dispositive of the numerosity issue.

13

Defendants next argue that, taking into account all of the circumstances of the case, joinder is not impracticable. (Ds' Mem. at 17-18.) Indeed, "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers." *Robidoux*, 987 F.2d at 936. "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Id.*

"To satisfy the judicial economy factor, Plaintiffs must show that 'the difficulty of joining all members makes class litigation desirable.' This is because joinder could equally serve the interests of judicial economy in many cases." *Deen v. New Sch. Univ.*, No. 05-CV-7174, 2008 WL 331366, at *3 (S.D.N.Y. Feb. 4, 2008) (quoting *CL-Alexanders Laing & Cruickshank v. Goldfeld*, 127 F.R.D. 454, 455 (S.D.N.Y. 1989)) (alteration and citation omitted). Plaintiffs assert that "[r]esolving this issue through one class action suit, as opposed to numerous individual suits seeking identical remedies . . . promotes judicial economy," (Ps' Mem. at 17), but Plaintiffs do not offer any specific support for this assertion. Generally, where a plaintiff "provide[s] no evidence that joinder of the proposed class members into a consolidated action would be difficult to accomplish, or that this method of adjudication would be somehow less efficient than class certification . . ., Plaintiffs cannot satisfy the judicial economy factor." *Deen*, 2008 WL 331366, at *3. But joinder is difficult, if not impossible, where the identities of some class members are unknowable to plaintiffs, either because they have not been disclosed by defendants or because the class's composition is fluid and changing. *Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 388 (S.D.N.Y. 2000). Here, Plaintiffs allege that many class members are unidentifiable at this stage because Defendants were required to redact identifying information in

the documents they produced and because the class is fluid – new freshmen, transfer, and visiting students come in each year, while graduating and visiting students leave.  Further, the names of Campus visitors cannot reasonably be ascertained.  Joinder of all class members at this stage is therefore difficult, if not impossible.  Accordingly, this factor favors certification.

Plaintiffs next assert that "members of the putative class are dispersed throughout the Westchester County area and include visitors to the area as well" and therefore the second factor above favors class certification.  (Ps' Mem. at 17.)  Plaintiffs' assertion is unsupported, and I do not think that dispersion within a single county is what the Second Circuit contemplated when it instructed courts to consider "geographic dispersion of class members."  *Robidoux*, 987 F.2d at 936.  That said, it is possible that some of the tens of thousands of visitors to the Campus each year are geographically dispersed, and thus some potential class members may not be in Westchester County.  Accordingly, this factor weighs against certification but only slightly.

With regard to the financial resources of class members, Defendants state that because no named or unnamed Plaintiffs are paying for legal counsel in this case, Plaintiffs "cannot credibly argue that the proposed class members' financial resources affect their ability to join the named plaintiffs' lawsuit."  (Ds' Opp. at 18.)  Plaintiffs do not address this factor in their opening or reply briefs.  Defendants are correct that Plaintiffs' counsel is not charging its clients a fee, but the inquiry into financial resources implicates both the proposed class members' ability to join the Plaintiffs' suit as well as their ability to bring suits of their own, *see Ansari*, 179 F.R.D. at 115, and neither party addressed the latter.  Accordingly, to the extent that this factor examines whether potential class members can join the instant suit, the factor weighs against certification, but to the extent it examines whether class members have the financial resources to bring suits of their own, this factor is neutral.

The next factor is whether the proposed class members have the ability to bring individual suits in the future. This factor is closely associated with the financial resources factor above. *See Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 120 (E.D.N.Y. 2011) (finding numerosity based, in part, on "the limited financial resources of the commissioned technicians, and their inability to institute individual suits"); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 269 F.R.D. 252, 259 (S.D.N.Y. 2010) (analyzing "the third and fourth *Robidoux* factors" together), *aff'd sub nom. Pa. Pub. Sch. Emps' Ret. Sys.*, 772 F.3d 111; *Ansari*, 179 F.R.D. at 115 (deciding the third and fourth factors on "similar reasons"). Plaintiffs again did not address this factor, but Defendants' suggestion that Plaintiffs must establish that the class members are "incarcerated, unsophisticated, or elderly," (Ds' Opp. at 18), is misplaced. The case on which Defendants rely for that proposition involved sophisticated institutional investors, and the instant case does not present analogous facts. Accordingly, I find that this factor is neutral.

The fifth factor requires me to consider whether the class seeks prospective injunctive relief and whether that relief would implicate the interests of future class members. This factor weighs heavily in favor of class certification. First, Plaintiffs here seek to represent a 23(b)(2) class, and seek only injunctive relief, not monetary damages. Second, an injunction here "would affect all potential class members, and individual suits could lead to potentially inconsistent results" in terms of making the Campus accessible. *Robidoux*, 987 F.2d at 936. Third, and relatedly, the "fluid composition" of SUNY Purchase's student body – new freshmen, transfer, and visiting students come in each year, while graduating and visiting students leave – "weighs in favor of finding that the numerosity requirement is satisfied." *Sparks v. Seltzer*, No. 05-CV-1061, 2005 WL 3116635, at *4 (E.D.N.Y. Nov. 22, 2005); *see Clarkson v. Coughlin*, 783 F. Supp. 789, 797 (S.D.N.Y. 1992) ("fluid composition" of prison population supports

certification); *Harder*, 298 F. Supp. 3d at 407 (same at juvenile facility); *Abdi*, 323 F.R.D. at 140 (same for asylum seekers); *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 547 (S.D.N.Y.) (same for public housing population), *decision clarified on other grounds sub nom. German ex rel. German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385 (S.D.N.Y. 1995). Accordingly, this factor weighs in favor of finding numerosity satisfied.

While the second factor, and third factor to a lesser extent, weigh against certification, the first and fifth factors weigh heavily in favor of certifying the class. Because Plaintiffs seek injunctive relief that will benefit numerous present and future class members (some of which are unidentifiable at this time), to avoid potentially inconsistent rulings across multiple suits, and in light of the relaxed numerosity standard applicable to suits seeking declaratory and injunctive relief, I find that the circumstances surrounding Plaintiffs' putative class action show that joinder is impracticable. At the very least, the circumstances surrounding Plaintiffs' case do not weigh against finding numerosity satisfied, given that Plaintiffs have established that the number of putative class members exceeds forty, the presumptively reasonable number. Accordingly, I find that Plaintiffs have established by a preponderance of the evidence that the class is so numerous as to make joinder impracticable.

**B.    Commonality**

The commonality requirement requires a showing that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (alteration in original) (internal quotation marks omitted). "Generally, courts have liberally construed the commonality requirement to mandate a

minimum of one issue common to all class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05-CV-5237, 2007 WL 2872455, at *6 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted). "Consideration of this requirement obligates a district court to determine whether plaintiffs have 'suffered the same injury.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Plaintiffs argue that there are questions of fact and law common to the class because "the core legal issue pertains to Defendants' failure to provide accessible rights-of-way at SUNY Purchase," and all putative class members "will benefit from a common remedy: a comprehensive plan to remove these architectural barriers across the SUNY Purchase Campus." (Ps' Mem. at 18-19.) Defendants counter that "Plaintiffs do not (and cannot) connect th[eir] hodge-podge of alleged violations to a particular SUNY policy or practice that could be enjoined." (Ds' Opp. at 19.) Further, Defendants state:

> Plaintiffs' assertion that certification is appropriate because some purported class members claim that they have certain limitations, have allegedly been denied meaningful access to *some* program or service due to *some* alleged barrier, *somewhere* on campus ignores the Supreme Court's admonition in *Wal-Mart* that "[c]ommonality . . . does not mean merely that [putative class members] have all suffered a violation of the same provision of law."

(*Id.* at 19 (quoting *Wal-Mart*, 564 U.S. at 349-50) (alterations and emphasis in original).) Finally, Defendants argue that "individualized issues with respect to the validity and extent of the putative class members' claims will drive the resolution of the remainder of this litigation." (*Id.* at 20.) For example, Defendants contend that one class cannot contain members who allege the Neuberger Museum is inaccessible and also contain members who have visited the museum and never personally faced barriers getting there. (*Id.* at 20-21.)

"What matters to class certification is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to

drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotation marks, alterations, and emphasis omitted). Here, the putative class's claims raise a common question of whether Defendants have a policy or have otherwise in practice failed to take into account the needs of people with mobility disabilities and therefore deprived them of access to SUNY Purchase's services. The answer to that question – whether Defendants by policy or practice deprive individuals with mobility disabilities meaningful access to the Campus – will drive the resolution of the litigation, and any potential remedy requiring SUNY Purchase to provide accessible rights-of-way will benefit the entire class. Indeed "[w]hen the plaintiff class seeks to enjoin a practice or policy, rather than individualized relief, commonality is assumed." *Shepard v. Rhea*, No. 12-CV-7220, 2014 WL 5801415, at *4 (S.D.N.Y. Nov. 7, 2014).

Defendants' argument that "individualized issues" will drive the resolution of this litigation is unavailing. "[F]actual differences among the claims of class members do not preclude a finding of commonality." *Id.* at *4; *see M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 441 (S.D.N.Y. 2006) (commonality established even where "each member of the class was denied benefits for slightly different reasons and under slightly different circumstances"); *Abdi*, 323 F.R.D. at 141 (commonality established "regardless of the fact that proposed class members allege violations of various provisions" of defendants' policy). Even though the putative "class members have diverse disabilities and will not all be affected by the alleged [barriers] in the same way," *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 418 (S.D.N.Y. 2012), commonality is satisfied where the suit challenges "acts and omissions of the [defendant] that are not specific to any particular [p]laintiff," but instead are best construed as denying an entire class of disabled individuals meaningful access, *Raymond v. Rowland*, 220 F.R.D. 173, 180 (D. Conn. 2004); *see Hernandez*, 323 F.R.D. at 503 (cases challenging extent to

which defendants' policies and practices comply with Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, are mine-run of disability rights class actions under Rule 23(b)(2)). Here, despite variations in the buildings to which putative class members were denied access, and even despite the fact that some class members were able to access certain buildings while others were not, the core issue presented is whether Defendants engaged in a general course of conduct of not providing accessible paths of travel throughout the Campus, thereby denying people with mobility disabilities meaningful access. The answer to this question will resolve all of the class claims. Accordingly, Plaintiffs have established commonality.

### C. **Typicality**

Typicality is satisfied if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart*, 564 U.S. at 362, *as recognized in Amara v. CIGNA Corp.*, 775 F.3d 510 (2d Cir. 2014). "A named plaintiff's claim is 'typical' under Rule 23(a)(3) if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Jeffries*, 2007 WL 2454111, at \*12 (internal quotation marks omitted). "It is well established that typicality does not require identical facts," *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 157 (S.D.N.Y. 2017) (internal quotation marks omitted), "so long as the disputed issues occupy the same degree of centrality between the named representatives and the class," *Hill v. City of N.Y.*, 136 F. Supp. 3d 304, 356 (E.D.N.Y. 2015), *order amended and supplemented*, No. 13-CV-6147, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019).

Though courts often discuss the commonality and typicality requirements together, *see In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 582 (S.D.N.Y. 2008) (collecting cases); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rule 23(a)(2) and (3)"), "[t]he typicality element is distinct from commonality in that typicality focuses on '*claims or defenses*,' rather than on 'questions of law or fact,'" *Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 326 (D. Conn. 2009) (emphasis in original) (quoting Fed. R. Civ. P. 23(a)). "The commonality requirement . . . tests the definition of the class itself, while the typicality requirement focuses on how the named plaintiff's claims compare to the claims of the other class members." *Traver v. Lowe's Home Ctrs., LLC*, No. 12-CV-3528, 2016 WL 880169, at *2 (E.D.N.Y. Mar. 1, 2016) (internal quotation marks omitted). Like commonality, however, "[t]ypicality may be assumed where the nature of the relief sought is injunctive and declaratory." *Nicholson*, 205 F.R.D. at 99; *Brown v. City of Barre*, No. 10-CV-81, 2010 WL 5141783, at *6 (D. Vt. Dec. 13, 2010) ("When a plaintiff seeks injunctive and declaratory relief, there is a presumption that both commonality and typicality are present.").

### 1. Defendants' Course of Conduct

Plaintiffs argue that "the proposed class members' claims all center upon the same course of conduct: Defendants' failure to provide accessible rights-of-way at SUNY Purchase." (Ps' Mem. at 20.) Specifically, "[t]he named Plaintiffs and proposed class members all regularly encounter barriers while visiting and traversing SUNY Purchase – or are deterred from visiting and traversing SUNY Purchase altogether." (*Id.*) Plaintiffs further argue that their claims are typical of the claims of proposed class members in that

> (1) all allege violations of the ADA and Section 504 [of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*]; (2) all argue that Defendants are obligated to install and

maintain accessible rights-of-way in order to ensure program access to the SUNY Purchase campus; and (3) all allege that Defendants have not ensured program access.

(*Id.*)  Defendants contend that Plaintiffs have failed to show that their injuries derive from a unitary course of conduct or from a definable policy or practice by Defendants.  (Ds' Opp. at 21.) Defendants also argue that Plaintiffs' class claims "arise from *different* events of *varying* character, separated by place and time, relying on different factual allegations and requiring different legal elements, some of which directly conflict with the allegations of other Plaintiffs or putative class members."  (*Id.* at 21-22 (emphasis in original).)

I find that Plaintiffs have shown that their claims arise out of Defendants' alleged general practices and course of conduct in not providing and maintaining accessible rights-of-way, which allegedly resulted in the Defendants denying Plaintiffs and the class meaningful access to SUNY Purchase's Campus.  Defendants' argument that Plaintiffs must plead a unitary policy that resulted in all of the class members' injuries misconstrues the typicality standard, especially as applied to a putative class of individuals with disabilities.  While establishing the existence of unitary policy is sufficient for typicality, it is not required.  Plaintiffs also may plead that Defendants engaged in "general practices," which, taken together, can be construed as a single course of conduct giving rise to the claims of all class members.  *D.S. ex rel. S.S. v. N.Y.C. Dep't of Educ.*, 255 F.R.D. 59, 72 (E.D.N.Y. 2008); *see Hill*, 136 F. Supp. 3d at 356 (typicality satisfied even though plaintiffs alleged numerous unlawful policies and even though "each named [p]laintiff may not yet have been affected by each alleged policy").  Plaintiffs here alleged that Defendants had a general policy, or at least a general practice, of not providing accessible rights-of-way on Campus, which violated the ADA because it resulted in the exclusion of class members from many of the programs and services offered.  "While these exclusions were effectuated in a variety of ways . . . defendants' general practices and course of

conduct and the harms suffered by class and subclass members satisfy the typicality requirement for purposes of class certification." *D.S.*, 255 F.R.D. at 71-72 (typicality satisfied even those some class members suffered "wholesale exclusion from school," while others were "place[d] on shortened class schedules or in the auditorium program," and still others were subject only to "partial day exclusions").

While some class members allege that they were denied access to the Neuberger Museum, and others to the PAC, for example, they all allege that SUNY Purchase's failure to maintain accessible paths of travel throughout the Campus was the cause of their denial of access. That some Plaintiffs were able to access certain buildings that other class members were not able to access is a fact Defendants may use to try to show that they did not deny the class meaningful access to the Campus, but it does not mean that the Plaintiffs' claims are not typical of other class members' claims. Disabilities are unique, and may vary greatly from person to person, *see Ray M. ex rel. Juana D. v. Bd. of Educ. of City Sch. Dist.*, 884 F. Supp. 696, 706 (E.D.N.Y. 1995) ("While the specific disabilities of the named plaintiffs are different – each disabled child is unquestionably unique – . . . named plaintiffs are sufficiently typical of the expanded class."), and it can therefore be expected that barriers will affect class members differently. Factual variations in the buildings to which Plaintiffs and other class members were denied access does not make Plaintiffs' claims atypical, as long as they establish a general policy or course of conduct that was responsible for the barriers across the Campus, which I find the Plaintiffs have sufficiently alleged here, *see id.*; *see also Cortigiano*, 227 F.R.D. at 206 ("The fact that there may be slight variations in how defendants treated different plaintiffs (or putative class members) does not render the claims atypical."); *Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and

the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

### 2. Unique Defenses

Typicality may be defeated "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Vincent v. Money Store*, 304 F.R.D. 446, 455 (S.D.N.Y. 2015). But the so-called "unique defense rule . . . is not rigidly applied in this Circuit," *In re Parmalat Sec. Litig.*, No. 04-CV-30, 2008 WL 3895539, at *5 (S.D.N.Y. Aug. 21, 2008) (internal quotation marks omitted), and when it is applied, it is generally to protect the class rather than to "shield defendants from a potentially meritorious suit and . . . only where a full defense is available against an individual plaintiff[']s action," *id.* (internal quotation marks omitted).

### a. Individual Plaintiffs' Standing

Defendants argue that class certification is inappropriate because the named Plaintiffs lack standing and are therefore each is subject to a unique defense that threatens to become the focus of the litigation. (Ds' Opp. at 22 (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000).) As an initial matter, Defendants' challenge to standing may go beyond the scope of this Rule 23 motion, but because I reject Defendants' standing argument, I will address it here.

To establish standing under the ADA, a plaintiff can (1) show past injury under the ADA, (2) raise a reasonable inference that the discriminatory treatment will continue, and (3) raise a reasonable inference that the plaintiff intended to return to the subject location. *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). Defendants argue that Plaintiffs

have not established the first element above by failing to show that they were denied meaningful access to SUNY Purchase's programs. (Ds' Opp. at 24-26.)

"Individuals may be deprived of meaningful access to public programs due to architectural barriers or a public entity's failure to modify existing facilities and practices. Indeed, 'elimination of architectural barriers was one of the central aims of the [Rehabilitation] Act'" and Title II of the ADA. *Disabled in Action v. Bd. of Elections of New York*, 752 F.3d 189, 197 (2d Cir. 2014) (alteration in original) (quoting *Alexander v. Choate*, 469 U.S. 287, 297 (1985)). Defendants argue that the individual Plaintiffs do not have standing because none of them have been denied meaningful access to the Campus, but Defendants cite only to out-of-circuit cases to support their assertion. Cases from within this circuit show that Plaintiffs have done enough to establish standing.

Whether I apply the standard that "plaintiffs need only properly allege such an injury" *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 414, which is applied at the motion-to-dismiss stage, or require Plaintiffs to "set forth by affidavit or other evidence specific facts supporting standing," *Perdum v. Forest City Ratner Cos.*, 174 F. Supp. 3d 706, 714 (E.D.N.Y. 2016), *aff'd*, 677 F. App'x 2 (2d Cir. 2017) (summary order), which is applied at the summary-judgment stage, Plaintiffs have carried their burden. They have provided affidavits alleging that Wheeler was, among other things, unable to attend shows at the PAC and deterred from trying to do so in the future due to known barriers, unable to take the Loop shuttle on Campus, and unable to get to classes and the dining hall on certain occasions. (Wheeler Decl. ¶¶ 5-9, 13, 16-18). Additionally, Hill attested that she missed classes due to overly steep rights-of-way, frequent elevator outages, lack of accessible routes due to construction and inclement weather, and lack of access to accessible parking spaces. (Hill Decl. ¶¶ 11-13, 15-19, 30-31.) Finally, Hellman stated

that he has been unable to visit the library, dormitories, and Neuberger Museum during visits to Campus, and dissuaded from returning to Campus due to the barriers that he is certain he will face there. (Hellman Decl. ¶¶ 12-13, 40-42.) Cases from within this Circuit have found plaintiffs with similar claims to have standing under the ADA and Rehabilitation Act. *See Scalercio-Isenberg v. Port Auth.*, No. 16-CV-8494, 2018 WL 1633767, at *8 (S.D.N.Y. Mar. 31, 2018) (collecting cases in which evidence of physical barriers that "occasionally deter[]" a plaintiff from participating in defendants' services is sufficient to show lack of meaningful access); *see also Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 73 (2d Cir. 2016) (inmate denied meaningful access where, among other things, he at times was unable to visit law library and was deterred from participating in recreational time because he would be unable to escape quickly in event of a fight due to lack of accessible rights-of-way); *Disabled in Action*, 752 F.3d at 200 (recognizing that "deterrence constitutes an injury under the ADA"); *Celeste v. E. Meadow Union Free Sch. Dist.*, 373 F. App'x 85, 88 (2d Cir. 2010) (summary order) (refusing to disturb jury finding that student was denied meaningful access to school where barriers caused mobility-disabled student to miss nearly half of each gym class).

Defendants can and, based on their lengthy treatment of the statutory and regulatory framework of Plaintiffs' claims, likely will argue that they are entitled to summary judgment because they did not deny individuals with mobility disabilities meaningful access to SUNY Purchase's services and programs. This argument may or may not be meritorious, but, at least on the current record, it applies as much to the class as a whole as it does to the individual Plaintiffs. Accordingly, I do not find that the defense that individual Plaintiffs lack standing makes their claims atypical.

b.      WILC's Standing

"An organization can have standing to sue in one of two ways.  It may sue on behalf of its

members, in which case it must show, *inter alia*, that some particular member of the organization

would have had standing to bring the suit individually," commonly referred to as associational

standing, or "an organization can have standing in its own right to seek judicial relief from injury

to itself and to vindicate whatever rights and immunities the association itself may enjoy,"

known as organizational standing.  *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d

286, 294 (2d Cir. 2012) (internal quotation marks omitted).

Defendants argue that WILC does not have standing under either theory, and thus it is

subject to a unique defense, which makes its claims atypical of the rest of the class.  (Ds' Mem.

at 27-28.)  Plaintiffs state that "numerous WILC constituents have been negatively affected by

barriers on the SUNY Purchase campus in recent years," implicating associational standing, (Ps'

Mem. at 11), and that "WILC has and continues to spend time and resources advocating for

greater access to the programs, services, and activities offered at SUNY Purchase," implicating

organizational standing, (*id.*).

Typically, associational standing is available only where the organization is suing on

behalf of its members.  WILC is not a traditional voluntary membership organization; rather, it

serves constituents to further its mission to empower people with disabilities to lead self-directed

lives in the community.  (Bravo Decl. ¶ 4.)  To establish associational standing "[w]here an

association is not a traditional voluntary membership organization, its constituents must

nevertheless possess sufficient 'indicia of membership.'"  *Mental Hygiene Legal Serv. v. Cuomo*,

609 F. App'x 693, 695 (2d Cir. 2015) (summary order) (quoting *Hunt v. Wash. State Apple

Advert. Comm'n*, 432 U.S. 333, 344 (1977)).  Defendants cite to *Disability Advocates, Inc. v.*

*New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149, 158 (2d Cir. 2012), and

*Mental Hygiene*, 609 F. App'x at 695, to support their assertion that WILC does not have

standing, but I find that both cases are instructive as to why WILC does have associational

standing.

In *Disability Advocates*, the Second Circuit found that constituents of a nonprofit

organization that protected and advocated for people with mental illness did not possess

sufficient indicia of membership in the nonprofit. 675 F.3d at 158-59. The court based its

decision in part on the fact that there was "scant evidence in the record that the individuals with

mental illness whom [the nonprofit] purports to represent have the power to elect its directors,

make budget decisions, or influence [the nonprofit's] activities or litigation strategies." *Id.* The

Court, however, explained that it may have ruled differently had the plaintiff-organization

claimed that the people it was designed to protect and for whom it advocated had "an active

affiliation with the organization." *Id.* at 158. Further, had the plaintiff been governed by a

statute applicable to related organizations that required mental illness service providers to

establish an advisory council made up of at least sixty percent individuals with mental illness, the

outcome likely would have been different. *Id.* The court noted that while the question of

whether requiring an advisory council made up of people with mental illness was "sufficient to

connote the 'indicia of membership' required for associational standing . . . has not heretofore

been addressed in this Circuit[,] [s]ome, but not all, courts of appeals to address the question

have concluded that [it is] sufficient." *Id.* (collecting cases). In *Mental Hygiene*, the Second

Circuit held that the plaintiff-organization lacked associational standing because "its constituents

do not 'elect' its members, do not 'serve' on the association, and do not 'finance its activities.'"

609 F. App'x at 695 (quoting *Hunt*, 432 U.S. at 344).

Here, approximately eighty percent of WILC's board members and sixty-five percent of its staff have a disability. (*See* Bravo Decl. ¶¶ 6, 20-22.) Therefore, unlike the plaintiff-organizations in *Disability Advocates* and *Mental Hygiene*, WILC is staffed, directed, and driven by the individuals with disabilities that it seeks to serve. And without direct guidance from the Second Circuit, I find persuasive the decisions of other appellate courts finding organizations that are directed by the individuals that they seek to serve to be member organizations. *See Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003) (indicia of membership where "the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a personal stake in the outcome of the controversy") (internal quotation marks omitted); *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999) (indicia of membership where organization had advisory council made up of majority of individuals that organization sought to protect); *see also Citizens Coal Council v. Matt Canestrale Contracting, Inc.*, 40 F. Supp. 3d 632, 639 (W.D. Pa. 2014) ("members may exert influence over their organizations and their activities in a variety of ways" including meeting regularly and advising that organization's executive director). Here, not only is WILC's board and staff primarily made up of individuals with disabilities, but the executive director himself, presumably the most influential driving force at WILC, has a mobility disability. (Bravo Decl. ¶¶ 3-4.) Accordingly, while WILC is not a traditional membership organization, I find that its constituents have sufficient indicia of membership in the organization, and therefore WILC has associational standing and is not subject to a unique defense on that ground.[5]

---

[5] Because I find that WILC has associational standing, I need not address the argument that WILC lacks organizational standing.

Defendants also assert that WILC is contractually barred from bringing any action against the State. (Ds' Opp. at 28.) Plaintiffs contend that the contract provision only prohibits WILC

c.    Other Unique Defenses

Defendants provide a laundry list of other unique defenses that they raise against Plaintiffs, but none of them prevent a finding of typicality. As explained above "the Court's task at the Rule 23 stage is not to resolve the liability question," *Suvill*, 2014 WL 4966029, at *9, and "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* Defendants are essentially asking the Court to probe the merits of each Plaintiff's claim in the hope that I will find they are insufficiently pleaded or not supported by the evidence. But that is not appropriate on a Rule 23 motion.

Even if did consider the unique defenses, I still reject Defendants' arguments because each one is either not unique or not a defense. First, Defendants argue that the Plaintiffs failed to request reasonable accommodations. Plaintiffs dispute this, (Ps' Reply at 5 & n.5),[6] but in any event the cases on which Defendants rely do not require a plaintiff to request an accommodation as a condition precedent to bringing an ADA claim, (*see* Ds' Opp. at 29 n.21). Second, Defendants argue that Plaintiffs have failed to provide medical records describing their mobility disabilities. Again, Plaintiffs dispute this assertion, (Ps' Reply. at 5-6 & n. 6), and in any event Defendants provide no support for the notion that a plaintiff must provide medical records in an

---

from using funds from a particular contract to sue the State, and no such funds are being used here. (Ps' Reply at 10 n.12.) This dispute seems discrete and solvable, and thus, regardless of who is right, it does not "threaten to become the focus of the litigation," *Baffa*, 222 F.3d at 59 (internal quotation marks omitted), and accordingly it does not destroy typicality.

[6] In note 5 of the Plaintiffs' reply, Plaintiffs cite to their response to Defendants' interrogatory number 11, but that response was not provided to the Court. (*See* Doc. 191-4 at 9-12 (skipping from interrogatory 10 to 12).) But Plaintiffs response to interrogatory 10 also supports the proposition.

ADA or Rehabilitation Act case. Further, as explained above, the unique defense rule is designed to protect the class, not "shield defendants from a potentially meritorious suit," *see In re Parmalat Sec. Litig.*, 2008 WL 3895539, at *5, and thus, even if Plaintiffs failed to provide complete medical records, I do not find that that would be appropriate ground to apply the unique-defense rule, at least where, as here, there seems to be no serious dispute that Plaintiffs have mobility disabilities.

Finally, Defendants' arguments that Plaintiffs have not been denied access to SUNY Purchase's Campus in its entirety, that barriers to the PAC are subject to an undue burden defense, and that some claims are barred by the statute of limitations are all defenses that will be applicable to the class as a whole, not just the named Plaintiffs. Accordingly, they are not unique, and raising those defenses now will not defeat class certification. With no valid unique-defense argument, I find that Plaintiffs have established typicality.

### D. <u>Adequacy</u>

Rule 23(a)(4) requires that Plaintiffs show they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal quotation marks omitted). The adequacy inquiry "'is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.'" *Pichardo v. Carmine's Broadway Feast Inc.*, No. 15-CV-3312, 2016 WL 5338551, at *5 (S.D.N.Y. Sept. 23, 2016) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "A conflict or potential conflict alone will not, however, necessarily defeat class certification – the conflict must be fundamental." *Denney*, 443 F.3d at 268 (internal

quotation marks omitted).  In addition, to establish adequacy, "class counsel must be qualified, experienced and generally able to conduct the litigation."  *Vincent*, 304 F.R.D. at 456 (internal quotation marks omitted).

## 1.    Adequacy of Named Plaintiffs

Plaintiffs argue that Hill, Wheeler, and Hellman are adequate class representatives because they are "dedicated to protecting the interests of the class and achieving the common goal of all class members by requiring Defendants to make SUNY Purchase accessible to persons with mobility disabilities."  (Ps' Mem. at 21.)  Plaintiffs further argue that WILC has a "long and dedicated history of working to improve the lives of persons with disabilities, has expended time and resources responding to problems its constituents face as a result of the inaccessibility of SUNY Purchase, and is committed to the common goal of improving the accessibility of SUNY Purchase."  (*Id.* at 22.)  Additionally, because Plaintiffs seek "system-wide injunctive relief," which will benefit all putative class members, they argue they will adequately represent the interests of the entire class.  (*Id.* at 21.)  Defendants argue that this litigation is attorney-driven, and named Plaintiffs "had little knowledge of the role of a class representative, and had not been provided regular updates as to the instant litigation, let alone been involved in key decision [*sic*] as to how it was to proceed."  (Ds' Opp. at 31.)

Despite Defendants' attempt to discredit the named Plaintiffs' adequacy as representatives because they "appeared to lack knowledge regarding the case," (*id.* at 32), "[t]he Supreme Court has 'expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance.'"  *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 209 (S.D.N.Y. 2012) (quoting *Baffa*, 222 F.3d at 61)).  Defendants' argument to the contrary is based on three out-of-circuit cases that I do not find persuasive.  (*See*

Ds' Opp. at 32 n.23.)  Here, the Plaintiffs have all demonstrated a willingness to participate in

this case and to pursue their claims, the relief they seek is identical to the relief sought by the

class, and there is no evidence or even a suggestion that the named Plaintiffs have interests that

are antagonistic to the rest of the class, all of which support their adequacy argument.  *See, e.g.*,

*Sgalambo v. McKenzie*, 268 F.R.D. 170, 174 (S.D.N.Y. 2010); *Olsen v. N.Y. Cmty. Bancorp,

Inc.*, 233 F.R.D. 101, 109 (E.D.N.Y. 2005).  Accordingly, I find that Plaintiffs are adequate class

representatives.

### 2.    Adequacy of Class Counsel

Plaintiffs state that class counsel "clearly meets the requirements of Rule 23(a)(4)"

because "Disability Rights Advocates ('DRA') is a renowned not-for-profit law firm with

extensive experience litigating class action lawsuits involving disability rights and has served as

lead counsel in hundreds of disability civil rights class actions since DRA's founding in 1993."

(Ps' Mem. at 22.)  Indeed, Plaintiffs have identified a number of cases in which DRA was

appointed class counsel.  (*Id.* at 22-23.)  Defendants do not dispute DRA's experience with

respect to disability-rights litigation, but they argue that DRA has inappropriately solicited

class members and has otherwise engaged in "inappropriate" and "disingenuous" conduct during

discovery, which they believe militates against certification.  (Ds' Opp. at 33.)

The cases cited by Defendants in which courts denied class certification because class

counsel solicited clients are not applicable.  *Bodner v. Oreck Direct, LLC*, No. 06-4756, 2007

WL 1223777, at *1 (N.D. Cal. Apr. 25, 2007), involved plaintiffs' counsel shopping for a

plaintiff to be a class representative in a suit seeking money damages.  *Meachum v. Outdoor

World Corp.*, 654 N.Y.S.2d 240, 243 (Sup. Ct. 1996), involved named plaintiffs who were

seeking money damages and employed by the law firm representing them.  Both are markedly

different than a not-for-profit law firm soliciting class members in a case seeking injunctive relief. *See In re Primus*, 436 U.S. 412, 431 (1978) ("no basis for equating the work of lawyers associated with the ACLU or the NAACP with that of a group that exists for the primary purpose of financial gain through the recovery of counsel fees"). Further, while Plaintiffs' counsel have seemingly engaged in some dubious tactics during discovery, their conduct does not rise to the level of "unethical conduct [that] . . . raises a 'serious doubt' about the[ir] adequacy [because it] . . . jeopardizes the court's ability to reach a just and proper outcome in the case." *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 499 (7th Cir. 2013) There is no question that DRA is qualified to represent the class here, and accordingly, I find that DRA is adequate class counsel.

   **E.      Ascertainability**

   As a threshold matter, "[i]t is not clear that the ascertainability requirement applies to Rule 23(b)(2) class actions . . . as notice is not obligatory and the relief sought is injunctive rather than compensatory." *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 419 n.3. Even if ascertainability is required, however, the class here is ascertainable. Indeed, Defendants do not argue otherwise.

   Plaintiffs seek to represent a class of all people with mobility disabilities who use or will use pedestrian rights-of-way at SUNY Purchase. (FAC ¶ 72.) "[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries." *Univs. Superannuation Scheme Ltd. v. Petróleo Brasileiro S.A. Petrobras* (*In re Petrobras Sec.*), 862 F.3d 250, 257 (2d Cir. 2017). Here, the class is defined using objective criteria – whether the person has a mobility disability and whether the person has used or will use a pedestrian right-of-way on the campus – and thus the class is sufficiently ascertainable. The fact that the class

includes "future members . . . does not pose an obstacle to certification." *Abdi*, 323 F.R.D. at 137; *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 369 (S.D.N.Y. 2019) ("Courts regularly approve classes involving future members when those members face a threat of imminent injury."). Accordingly, I find that Plaintiffs have established ascertainability.

F.     **Rule 23(b)(2) Requirements**

Rule 23(b)(2) provides that a class may be maintained thereunder if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (internal quotation marks omitted).

Defendants first argue that "since the proposed class members' allegations and experiences differ significantly from one another's," there is no classwide relief that would be appropriate for the entire class. (Ds' Opp. at 34.) But Defendants' attempt to reframe this case as one in which Plaintiffs allege multiple discrete violations as opposed to a single pattern of conduct that discriminates against individuals with mobility disabilities misconstrues Plaintiffs' factual and legal claims. Plaintiffs allege that the Defendants have undertaken a general course of conduct of not providing accessible rights-of-way throughout the Campus or, in other words, a "systemic failure . . . to properly fulfill statutory requirements" as set forth in the ADA and Rehabilitation Act. *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 420, ("[C]ases like this one, alleging systemic failure of governmental bodies to properly fulfill statutory requirements, have been held to be appropriate for class certification under Rule 23(b)(2).")

(internal quotation marks omitted); *Lovely H. v. Eggleston*, 235 F.R.D. 248, 257 (S.D.N.Y. 2006) (to the same effect). Putative classes bringing such claims are properly certified under Rule 23(b)(2) where, as here, Defendants' "failure to act is said to be institutional[,] not merely a cumulation of individual cases." *Brown v. Giuliani*, 158 F.R.D. 251, 269 (E.D.N.Y. 1994). Of course, due to the varying nature of mobility disabilities (*e.g.*, some individuals need wheelchairs, others need different mobility aids, and still others do not need any aids but have trouble walking long distances or up slopes or stairs), not every class member will encounter barriers to access in the same way. But that does not change the fact that all class members are claiming that Defendants failed to provide accessible rights-of-way pursuant to a general policy or practice or lack thereof.

Defendants next argue that, "[d]espite nearly three years of litigation, the injunctive relief Plaintiffs request remains shifting and vague" and "[a]lleged issues pertaining to instances of slow snow removal, construction-related detours, and broken elevators are transitory issues that, even if they rose to the level of an ADA violation, do not lend themselves to tailored injunctive relief." (Ds' Opp. at 34.) But Plaintiffs assert that they are seeking an order directing Defendants to remedy path-of-travel barriers on SUNY Purchase's Campus, which can be done by creating and implementing an ADA transition plan along the lines set forth in 28 C.F.R. § 35.150(d). (Ps' Reply at 8 & n.9.) If Plaintiffs succeed on the merits, the regulatory framework in place can guide the transition into making the Campus more accessible. Further, it is not uncommon for courts to order defendants to ensure compliance with statutory obligations providing for accessibility. *See Disabled in Action*, 752 F.3d at 205 (affirming district court's remedial order "creat[ing] a framework for [defendant] to cooperate with experts and plaintiffs to confront accessibility challenges and develop feasible accommodations over time"); *Shariff v.*

*Alsaydi*, No. 11-CV-6377, 2013 WL 4432218, at *4 (E.D.N.Y. Aug. 15, 2013) (issuing "an injunction requiring defendants to prepare architectural plans remedying the violations of the ADA Accessibility Guidelines"); *New York ex rel. Spitzer v. County of Delaware*, 82 F. Supp. 2d 12, 18 (N.D.N.Y. 2000) (ordering preliminary injunction mandating "defendants' compliance with the ADA Accessibility Guidelines for Buildings and Facilities, and the New York State Uniform Fire and Building Code § 1100, to the degree it[] is feasible to do so"). Accordingly, I disagree with Defendants' assertion that the complained-of conduct cannot be meaningfully enjoined, and I find that Plaintiffs have met their burden under Rule 23(b)(2).

### G. Definite and Cohesive Class Definition

Defendants' final argument against class certification is premised on the theory that the class's claims are not "cohesive." (Ds' Opp. at 35.) Some courts require that plaintiffs seeking to certify a Rule 23(b)(2) class "must demonstrate that the class is 'cohesive,'" *Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 395 (S.D.N.Y. 2015), but it is not entirely clear how this differs from the commonality requirement found in Rule 23(a), *see id.* ("This requirement is similar, conceptually, to the commonality requirement under Rule 23(a)."), and as explained above, Plaintiffs have established commonality. Moreover, "a Rule 23(b)(2) class seeking declaratory and injunctive relief is cohesive by nature." *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986). In any event, Defendants' argument as to why the class is not cohesive in part rehashes the arguments they made with regard to the Rule 23(a) factors. (Ds' Opp. at 35 ("For many of the reasons set forth above, the proposed class here is not cohesive, as there are numerous individualized issues to be decided.").) To the extent Defendants argue that the class lacks cohesion on those grounds, their argument is rejected.

Defendants also argue that the class lacks cohesion due to its "overbroad and indefinite" definition of the term "mobility disability." (*Id.*) Plaintiffs respond that individuals with mobility disabilities are "individuals who use wheelchairs, individuals who use other mobility aids, and individuals with disabilities that affect their ability to walk distances or climb stairs but who do not use any mobility aids." (Ps' Reply at 9.) Because "[a] district court is not bound by the class definition proposed in the complaint, and is empowered to carve out an appropriate class," *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (internal quotation marks omitted), I will adopt the formulation in Plaintiffs' brief as the definition of "mobility disability" as used in the class definition, which will clear up any issues of overbreadth or indefiniteness.

Finally, Defendants argue that under *Galvan v. Levine*, 490 F.2d 1255, 1261-62 (2d Cir. 1973), "class certification is often not 'necessary' when a Plaintiff seeks to certify a class seeking injunctive relief against a State actor." (Ds' Opp. at 35.) In such cases, Defendants argue, "'class action designation is largely a formality,' since any relief granted to the [p]laintiff will necessarily inure to the benefit of those situated similarly." (*Id.* (quoting *Finch v. N.Y.S. Office of Children & Family Servs.*, 252 F.R.D. 192, 198-99 (S.D.N.Y. 2008)).) That comment in *Finch*, however, related to prohibitory injunctive relief, *see* 252 F.R.D. at 199, not mandatory relief as is sought here, and the *Galvan* "doctrine is only applicable when a defendant affirmatively states that it will apply any remedy across the board," *Floyd*, 283 F.R.D. at 177 n.162, which Defendants have not done. Further, "[i]t is plainly inconsistent for Defendants to argue that any relief granted in connection with this action will be applied to benefit every member of the class, while at the same time they contest the existence of commonality and typicality." *Id.* (internal quotation marks omitted). And because "potentially complex"

injunctive relief "would be more appropriate as a remedy in the context of a class action, there are collateral consequences to denying certification and the *Galvan* doctrine is inapplicable." *Id.* Accordingly, I do not find that the class lacks "cohesiveness," and I find no reason to not certify the class that Plaintiffs have established complies with each of the Rule 23 requirements.

## IV.    CONCLUSION

Accordingly, Plaintiffs' motion for class certification is GRANTED.  The Court certifies a Rule 23(b)(2) injunctive and declaratory relief class comprising students and visitors with mobility disabilities – that is, individuals who use wheelchairs, individuals who use other mobility aids, and individuals with disabilities that affect their ability to walk distances or climb stairs but who do not use any mobility aids – who have been and are being denied meaningful access to the educational, cultural, and social programs, services, and activities offered at SUNY Purchase because of Defendants' continuing failure to provide accessible rights-of-way.  The Clerk of Court is respectfully directed to terminate the pending motion.  (Doc. 125.)  Pursuant to my December 5, 2018 ruling, the parties are ordered to meet and confer on a schedule for cross-motions for summary judgment.  (Minute Entry dated Dec. 5, 2018.)  They should send the Court a joint letter with their proposals, or laying out their competing positions, no later than June 18, 2019.

**SO ORDERED.**

Dated: June 12, 2019
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.